FILED
IN OPEN COURT

APR 21 2021

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:21-CR-85 |
| | ) | |
| v. | ) | Count 1: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Wire Fraud) |
| MEZHGAN N. ANWARI, | ) | |
| ABDUL Q. LATIFI, | ) | Counts 2 – 11: 18 U.S.C. § 1343 |
| MAHJOBA RAOFI, | ) | (Wire Fraud) |
| LAILA ANWARI, | ) | |
| RAFI M. ANWARI, and | ) | Forfeiture Notice |
| ZARGHONA ALIZAI, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

April 2021 Term - at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

### Introductory Allegations

At all times material to this Indictment, unless otherwise specified below:

### United States Military Operations in Afghanistan

1. As a result of the September 11, 2001, attacks on the United States, the United States Congress authorized the use of military forces in the Islamic Republic of Afghanistan ("Afghanistan"), as part of Operation Enduring Freedom. As a result, U.S. military forces were deployed to Afghanistan in 2001 and remained there through the date of this Indictment.

2. Dari and Pashto were the predominant languages spoken in Afghanistan, with Pashto being the primary language of insurgent groups like the Taliban who were fighting the Afghan government and U.S. military forces.

3. United States military personnel in Afghanistan required interpreters to provide language services in Dari and Pashto in furtherance of their military mission, including interaction with Afghan civilians and Afghan military forces who acted in support of Operation Enduring Freedom.

**Relevant Entities, Contracts, and Subcontracts**

4. The United States Army Intelligence and Security Command ("INSCOM") was a United States government agency headquartered at Fort Belvoir in Fairfax, Virginia, within the Eastern District of Virginia. Among its other duties, INSCOM delivered linguist support to United States Army components.

5. On or about September 7, 2007, INSCOM awarded contract W911W4-07-D-0010 ("the Prime Contract") to a government contractor headquartered in Ohio ("the Prime Contractor"). The purpose of the Contract was to supply qualified linguists to serve in support of United States military operations in Afghanistan. The initial value of the Contract was approximately $703,000,000.

6. Subcontractor #1 was a private company headquartered in Florida, which provided professional services to the federal government, including in the area of language support. Among the stated capabilities of Subcontractor #1 was recruiting, vetting, and retaining professionals with expertise in linguistics. Subcontractor #1 maintained an office in Arlington, Virginia, within the Eastern District of Virginia, where it performed recruiting services relating to the Subcontract.

7. In or about December 2008, the Prime Contractor awarded subcontract MEP-08-0001 to Subcontractor #1 ("the Subcontract"). The Subcontract was to identify and recruit qualified linguists who were proficient in the Dari and Pashto languages for the Contract.

8.  Subcontractor #2 was a private company headquartered in Ohio. It provided consulting and assessments for oral and written language skills for both government agencies and private companies.

9.  In or about February 2008, the Prime Contractor awarded a subcontract to Subcontractor #2 to administer independent language tests to the linguist candidates identified by Subcontractor #1. This independent testing was conducted during telephone interviews, known as Oral Proficiency Interviews, which were conducted by Subcontractor #2 testers with linguist candidates. The purpose of these tests was to ensure that the candidates identified by Subcontractor #1 met minimum proficiency standards in the Dari and Pashto languages.

### The Recruitment Process under the Subcontracts

10. Subcontractor #1 employed recruiters to identify and recruit qualified linguist candidates for positions on the Subcontract and Prime Contract. Subcontractor #1 also employed regional recruiting managers to oversee the work of the recruiters.

11. During the recruiting process, Subcontractor #1 recruiters collected personal information from linguist candidates—typically, name, phone number, street address, email address, social security number, and date of birth—which information later was intended to be used to verify the identity of linguist candidates during the Oral Proficiency Interviews.

12. The initial Oral Proficiency Interview test was conducted telephonically and scored based on correct answers on a scale of 1 to 5. A score of 3 to 5 was a passing score, and a score of 2 or less was a failed test.

13. Subcontractor #1 paid its linguist recruiters a base salary plus a series of incentive-based bonuses of between $250 and $3,000 determined by how far through a multi-step vetting process that recruiter's candidates progressed. Subcontractor #1 also paid its

3

regional recruiting managers a base salary plus a series of incentive-based bonuses. Regional recruiting managers could earn bonuses when the candidates brought in by recruiters under that manager's supervision progressed beyond certain points in the vetting process.

### The Co-Conspirators

14. Defendant MEZHGAN N. ANWARI ("MEZHGAN ANWARI") was employed as a regional recruiting manager by Subcontractor #1 from 2010 through 2012. She oversaw a team of Subcontractor #1 recruiters working remotely and was based at the Subcontractor #1 office in Arlington, Virginia, within the Eastern District of Virginia.

15. Defendant ABDUL Q. LATIFI ("LATIFI") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the Los Angeles, California area.

16. Defendant MAHJOBA RAOFI ("RAOFI") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the San Diego, California area.

17. Defendant LAILA ANWARI was employed as a linguist recruiter by Subcontractor #1 from 2011 through 2012 and was based in the Arlington, Virginia office, within the Eastern District of Virginia.

18. Defendant RAFI M. ANWARI ("RAFI ANWARI") was employed as a linguist recruiter by Subcontractor #1 from 2009 through 2012 and was based in the Arlington, Virginia office, within the Eastern District of Virginia.

19. Defendant ZARGHONA ALIZAI ("ALIZAI") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the Arlington, Virginia office, within the Eastern District of Virginia.

20. Abdul Aman ("Aman") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the Arlington, Virginia office, within the Eastern District of Virginia.

21. Kenneth O. Coates ("Coates") was employed as a regional recruiting manager by Subcontractor #1 from 2010 through 2012. He was based at the Subcontractor #1 office in Arlington, Virginia, within the Eastern District of Virginia, and oversaw a team of Subcontractor #1 recruiters, all of them based at the Arlington office.

22. Mustafa N. Neghat ("Neghat") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the Los Angeles, California area.

23. David Shah ("Shah") was employed as a linguist recruiter by Subcontractor #1 from 2011 through 2012 and was based in the New York, New York area.

24. Abdul A. Qurashi ("Qurashi") was employed as a linguist recruiter by Subcontractor #1 from 2010 through 2012 and was based in the New York, New York area.

## COUNT 1

(Conspiracy to Commit Wire Fraud)

25. Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated in this Count as if fully set forth herein.

26. Beginning no later than in or about 2011, and continuing through at least in or about 2012, in the Eastern District of Virginia and elsewhere,

MEZHGAN N. ANWARI,
ABDUL Q. LATIFI,
MAHJOBA RAOFI,
LAILA ANWARI,
RAFI M. ANWARI, and
ZARGHONA ALIZAI,

defendants herein, along with Abdul Aman, Kenneth O. Coates, Mustafa N. Neghat, David Shah, Abdul A. Qurashi, and others known and unknown to the grand jury, did knowingly conspire and agree with each other to commit certain offenses against the United States, namely, knowingly to devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to transmit and cause to be transmitted by means of wire and radio communication in interstate commerce, any writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purposes of the Conspiracy

27. The purposes of the conspiracy were for the defendants and others to: (1) supply Subcontractor #1, Subcontractor #2, and the Prime Contractor, and through them INSCOM, with false information regarding the language proficiency of prospective linguist candidates for the Subcontract and Contract; (2) fraudulently manipulate the results of Oral Proficiency Interview tests for linguist candidates who could not meet minimum proficiency standards under the Subcontract and Contract; (3) as a result, fraudulently seek and obtain bonus payments from Subcontractor #1; and (4) conceal the conspiracy.

### Manners and Means of the Conspiracy

28. Among the manners and means by which the defendants and their co-conspirators sought to, and did, achieve the purposes of the conspiracy were the following:

   a. The defendants would knowingly recruit individuals who lacked the minimum language proficiency in Dari, in Pashto, or in both languages, to apply to become linguists under the Subcontract and the Contract.

6

b. The defendants would knowingly provide information regarding the linguist candidates, including the candidates' names, dates of birth, and social security numbers, to Subcontractor #1 and Subcontractor #2, and arrange for Subcontractor #1 and Subcontractor #2 to schedule Oral Proficiency Interviews for the linguist candidates.

c. The defendants would arrange for other individuals, who had stronger language skills in Dari, in Pashto, or in both, to fraudulently impersonate the linguist candidates during the Oral Proficiency Interviews. In so doing, the defendants knowingly and fraudulently sought to make it appear that the linguist candidates possessed stronger language skills than in fact was the case, and sought to ensure that the linguist candidates would fraudulently receive passing scores from their Oral Proficiency Interviews.

d. At times, the defendants themselves would fraudulently impersonate linguist candidates during Oral Proficiency Interviews. At other times, the defendants would direct others whom they knew to possess superior language skills in Dari, Pashto, or both to fraudulently impersonate linguist candidates.

e. Linguist candidates who had failed their Oral Proficiency Interviews were permitted to re-apply by re-taking the interview after a designated waiting period. At times, after learning that a linguist candidate had failed his or her initial interview, the defendants would arrange for someone else to fraudulently impersonate the linguist candidate during the second interview.

f. Oral Proficiency Interviews typically were administered by telephone. To attempt to prevent cheating, Subcontractor #2 typically would seek to confirm the identity of a linguist candidate by asking the candidate to state his or her name, date of birth, social security number, or some combination thereof. The defendants sought to and did circumvent this

measure by providing the individual fraudulently impersonating the linguist candidate with that candidate's biographical information, thereby enabling the imposter to pose more convincingly as the linguist candidate.

g. At times, the defendants would knowingly provide Subcontractor #1 and Subcontractor #2 with the telephone number of the individual fraudulently impersonating the linguist candidate, rather than the true telephone number of the candidate. At other times, the defendants would arrange for the linguist candidate to give his or her cellular telephone to the person who would fraudulently impersonate the candidate during the Oral Proficiency Interview. In so doing, the defendants knowingly sought to ensure that the person administering the Oral Proficiency Interview would speak to the imposter, rather than the real candidate.

h. To conceal the nature and existence of the conspiracy, the defendants commonly would switch into foreign languages when communicating about the fraud.

i. The co-conspirators frequently would receive the substance or exact wording of the text that candidates would be required to translate during the Oral Proficiency Interviews. At times, the co-conspirators received this information from linguist candidates who recently had been interviewed. At other times, the co-conspirators received this information from individuals who were fraudulently impersonating candidates during recent interviews.

j. Once they had received this information, the co-conspirators would create or cause to be created written verbatim translations of the subject text. For example, if the co-conspirators received interview text in English, they would create or cause to be created written verbatim translations of that text in Pashto, Dari, or both.

k. The defendants would share the substance or exact wording of the text that candidates would be required to translate during the Oral Proficiency Interviews, and sometimes

also the written verbatim translations of that text, with other linguist candidates in advance of those candidates' interviews. In so doing, the defendants sought to fraudulently assist those candidates to cheat during the interviews and to receive a higher score than they otherwise would have received.

   l. The defendants would also share the substance or exact wording of the text that candidates would be required to translate during the Oral Proficiency Interviews, and sometimes also the written verbatim translations of that text, with other co-conspirators. The defendants shared this information knowing and intending that the other members of the conspiracy would assist their respective linguist candidates in cheating during their Oral Proficiency Interviews and fraudulently receiving a higher score during those interviews than they otherwise would have received.

   m. The defendants fraudulently sought to obtain and obtained recruiting bonuses from Subcontractor #1 through the manner and means described above.

   n. The defendants frequently used and caused the use of wire and radio communications in interstate commerce in furtherance of the conspiracy.

   o. The defendants sought to conceal the nature and existence of the conspiracy.

   All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH ELEVEN

(Wire Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

29. Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated in this Count as if fully set forth herein.

30. Beginning no later than in or about 2011, and continuing through at least in or about 2012, in the Eastern District of Virginia and elsewhere,

> MEZHGAN N. ANWARI,
> ABDUL Q. LATIFI,
> MAHJOBA RAOFI,
> LAILA ANWARI,
> RAFI M. ANWARI, and
> ZARGHONA ALIZAI,

defendants herein, along with Abdul Aman, Kenneth O. Coates, Mustafa N. Neghat, David Shah, Abdul A. Qurashi, and others known and unknown to the grand jury, did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

### Purposes of the Scheme and Artifice

31. Paragraph 27 of this Indictment is re-alleged and incorporated in this Count as if fully set forth herein.

### Manner and Means of the Scheme and Artifice

32. Paragraph 28 of this Indictment is re-alleged and incorporated in this Count as if fully set forth herein.

### Executions of the Scheme and Artifice

33. On or about the dates listed below, for the purpose of executing the above-described scheme and artifice, in the Eastern District of Virginia and elsewhere, the following defendants, as specified in each count below, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, as described below:

| Count | Approx. Date | Defendants Charged | Summary Description |
|---|---|---|---|
| 2 | 5/19/2011 | MEZHGAN N. ANWARI, ABDUL Q. LATIFI | an email sent by MEZHGAN N. ANWARI to ABDUL Q. LATIFI with a subject of "RE: OPI Test Results," from a computer within the Eastern District of Virginia, through and to computers outside of Virginia |
| 3 | 7/8/2011 | RAFI M. ANWARI | an email sent by RAFI M. ANWARI to linguist candidate A.S. with a subject of "Re: RE: salam Rafi jaan," from a computer within the Eastern District of Virginia through a computer or computers outside of Virginia |
| 4 | 8/23/2011 | MEZHGAN N. ANWARI, ABDUL Q. LATIFI | an email sent by ABDUL Q. LATIFI to MEZHGAN N. ANWARI with a subject that identifies the name of linguist candidate B.A., from a computer outside of Virginia to a computer within the Eastern District of Virginia |
| 5 | 9/15/2011 | MEZHGAN N. ANWARI, ABDUL Q. LATIFI, MAHJOBA RAOFI | an email sent by MAHJOBA RAOFI to MEZHGAN N. ANWARI, ABDUL Q. LATIFI, and others with a subject of "RE: TO DO LIST FOR TODAY," from a computer outside of Virginia to computers within the Eastern District of Virginia |
| 6 | 10/25/2011 | RAFI M. ANWARI | an email sent by RAFI M. ANWARI to Kenneth O. Coates with a subject of "opi," from a computer within the Eastern District of Virginia through a computer or computers located outside of Virginia |

| Count | Approx. Date | Defendants Charged | Summary Description |
|---|---|---|---|
| 7 | 11/16/2011 | LAILA ANWARI | an email sent by LAILA ANWARI to Kenneth O. Coates with a subject of "OPI TEST," from a computer within the Eastern District of Virginia through a computer or computers outside of Virginia |
| 8 | 12/8/2011 | MEZHGAN N. ANWARI, ABDUL Q. LATIFI | an email sent by MEZHGAN N. ANWARI to ABDUL Q. LATIFI with a subject of "RE: OPI Test Results," from a computer within the Eastern District of Virginia through and to computers located outside of Virginia |
| 9 | 3/8/2012 | MEZHGAN N. ANWARI, LAILA ANWARI, RAFI M. ANWARI, ZARGHONA ALIZAI | an email sent by ZARGHONA ALIZAI to MEZHGAN N. ANWARI, LAILA ANWARI, RAFI M. ANWARI, Abdul Aman, and others with a subject of "FW: Scan from a Xerox WorkCentre," from a computer within the Eastern District of Virginia through a computer or computers outside of Virginia |
| 10 | 3/8/2012 | ZARGHONA ALIZAI | an email sent by ZARGHONA ALIZAI to linguist candidate A.Z. with no subject line, from a computer within the Eastern District of Virginia through a computer or computers outside of Virginia |
| 11 | 5/7/2012 | MEZHGAN N. ANWARI, ABDUL Q. LATIFI, MAHJOBA RAOFI | an email sent by ABDUL Q. LATIFI to MEZHGAN N. ANWARI, MAHJOBA RAOFI, Mustafa Neghat, Abdul Qurashi, and David Shah with a subject line of "Re: *Pashto Questions - 4/19/12," from a computer outside of Virginia to computers within the Eastern District of Virginia |

(In violation of Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT THE PROPERTY DESCRIBED BELOW IS SUBJECT TO FORFEITURE:

34. Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that, if convicted of an offense alleged in Counts 1 through 11 of this Indictment, they shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the Counts of conviction.

35. If any property that is subject to forfeiture above, as a result of any act or omission of the defendants, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendants, as subject to forfeiture under Title 21, United States Code, Section 853(p).

36. The property subject to forfeiture includes, but is not limited to the following:

    a. A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses.

(In accordance with Title 18, United States Code, Sections 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a), Federal Rules of Criminal Procedure.)

Raj Parekh
Acting United States Attorney
Eastern District of Virginia

By: *[signature]*
Matthew Burke
Assistant United States Attorney

Daniel Kahn
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

*[signature]* for MPM
Michael P. McCarthy
Matthew Kahn
Trial Attorneys

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY